UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60980-CIV-COHN/SELTZER

STEVEN LEE DUBIN,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

I.    INTRODUCTION

THIS CAUSE is before the Court on the cross-motions for summary judgment[1] filed,

respectively, by Plaintiff Steven Lee Dubin ("Claimant") and by Defendant Carolyn W.

Colvin, Acting Commissioner of Social Security ("Commissioner"). On October 9, 2013,

the District Court referred the motions to the undersigned pursuant to 28 U.S.C. § 636 and

Magistrate Rule 1(c) and (d), Local Rules of the United States District Court for the

Southern District of Florida (DE 4).

The cross-motions present the general issue of whether there exists substantial

evidence to support the determination by the Administrative Law Judge ("ALJ") that

Claimant retains the residual functional capacity ("RFC") to perform his past relevant work

---

[1] Although other circuits have found the summary judgment device inappropriate for deciding cases under the Social Security Act, see, e.g., Igonia v. Califano, 568 F.2d 1383 (D.C. Cir. 1977), this Circuit has deemed it appropriate where the district court has reviewed the record and based its judgment on a finding of substantial evidence in the administrative record. See Lovett v. Schweiker, 667 F.2d 1 (5th Cir. 1981).

and is therefore "not disabled" and whether the ALJ properly applied the correct legal standards. As framed by Claimant's Motion, however, the more specific issues are whether the ALJ erred in discounting the treating physician's opinion and in discounting Claimant's subjective complaints and whether the ALJ properly applied the correct legal standards. The undersigned concludes that the ALJ did not err in discounting either the treating physician's opinion or Claimant's subjective complaints and that the ALJ did properly apply the correct legal standards in reaching her findings. Accordingly, the undersigned RECOMMENDS that Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof (DE 13) be DENIED, that Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (DE 18) be GRANTED, and that Commissioner's decision be AFFIRMED.

II.     PROCEDURAL HISTORY

On June 6, 2011, Claimant filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging an onset of disability as of January 1, 2011. Tr. 187-95. Claimant subsequently amended his alleged onset date to April 30, 2011. Tr. 41. His applications were denied initially and upon reconsideration. Tr. 122-26, 128-33, 138-48. On November 29, 2012, a hearing was held before ALJ Valencia Jarvis, who took testimony from both Claimant and a vocational expert ("VE"). Tr. 37-75. On December 20, 2012, the ALJ issued her decision, finding that Claimant can perform his past relevant work and that he is therefore not disabled. Tr. 22-31. Thereafter, on February 27, 2013, the Appeals Council denied Claimant's request for review, leaving the ALJ's decision standing as the final decision of the Commissioner. Tr. 1-4.

On April 26, 2013, Claimant filed a Complaint in this Court seeking judicial review of the Commissioner's decision (DE 1). On July 22, 2013, the Commissioner filed Defendant's Answer to Complaint (DE 9), together with the administrative record (DE 10). On September 11, 2013, Claimant filed Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof ("Claimant's Motion") (DE 13), and on November 12, 2013, the Commissioner filed Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment ("Commissioner's Motion") (DE 18). Finally, on November 26, 2013, Claimant filed Plaintiff's Reply in Further Support of Judgment ("Claimant's Reply") (DE 22).

The matter is now ripe for review.

III.    FACTS

The undersigned has reviewed the Statement of Facts contained within the Commissioner's Motion and finds that it fairly and accurately summarizes the relevant portions of the administrative record.[2]

> 1.    Plaintiff's Vocational Factors Relevant to His Ability to Work.
>
> Plaintiff attended some college and has past relevant work as an auto sales representative, a general manager, and a small business owner (Tr. 43, 67). Plaintiff testified that he collected unemployment, and during the relevant time period was also looking for work (Tr. 57). He further reported that he got engaged in April 2011 (Tr. 420), and as late as April 2012, testified that he was looking into new business ventures (Tr. 43-44, 64-65). Plaintiff also testified that he uses a computer frequently at home (Tr. 57).

---

[2] The undersigned has bracketed minor corrections to the Commissioner's Statement of Facts.

2.    Relevant Medical Evidence

Plaintiff was involved in an automobile collision in July 2004 where he injured his neck, shoulder, and left Achilles tendon (Tr. 237). However, Plaintiff was able to work after this time period and in fact worked until at least April 2011 [Tr. 41]. An MRI of Plaintiff's back on March 13, 2008, showed multi-level degenerative changes with a clinical indication of radiculopathy (Tr. 378-79).

Dr. Ross noted on March 2, 2010, that Plaintiff was fully alert and oriented, his attention and fund of knowledge were normal, and his memory was intact (Tr. 392). At this time, although Plaintiff had a decreased range of motion and muscle tenderness, his coordination, gait, and posture were normal (Tr. 392).    Dr. Ross assessed chronic pain syndrome comprised of anxiety and musculoskeletal complaints (Tr. 392). Later that month, Plaintiff's mental status exam was again normal and Plaintiff reported that his condition was stable (Tr. 397).  In May 2010, records from Alan Graff, M.D., note that Plaintiff was going to attend pain management with Dr. Ross (Tr. 340).

On May 26, 2010, Dr. Ross noted acute left C7 radiculopathy (mild), but also noted that Plaintiff was in no acute distress, and was neurologically stable (Tr. 399-400). On July 12, 2010, Plaintiff treated with Dr. Ross who administered a trigger point injection, which resulted in "good" relief of Plaintiff's symptoms (Tr. 357).    Dr. Ross noted on September 9, 2010, that Plaintiff's clinical neurological situation was stable (Tr. 354). At this time, Plaintiff reported that he was having ups and downs because of his work schedule, but reported that he was going on vacation (Tr. 354). Thereafter, on September 29, 2010, Plaintiff treated with Dr. Ross, who noted chronic pain syndrome comprised of anxiety and musculoskeletal complaints and cervical radiculopathy (Tr. 353). During this visit, Plaintiff reported that his condition had gotten worse, and he had a discussion with Dr. Ross regarding overall management (Tr. 353). Dr. Ross noted that Plaintiff should immediately stop taking oxycontin and oxycodone and prescribed him dilaudid (Tr. 353).

On October 27, 2010, Plaintiff's mental status evaluation was normal, he reported that his condition was now stable since his last visit, and he wanted to try a home exercise program

4

(Tr. 350[-51]).   In November 2010 although Plaintiff had tenderness in his Achilles tendon, Dr. Ross noted that Plaintiff's mental status examination was normal, and he had normal strength, tone, and reflexes (Tr. 349, 410).   Plaintiff reported that his division had closed and that he was back on the floor with car sales – but reported that his condition was stable (Tr. 348[-49]).   On December 15, 2010, Dr. Ross observed that Plaintiff's medications had been very "helpful" (Tr. 430).  Plaintiff reported that he had a good month, that his pain was stable, and that he was active (Tr. 430).

Plaintiff treated with Dr. Ross on January 10, 2011, and reported that he was going out of town, but that he was interested in a rehabilitation program (Tr. 428).  At this time, Dr. Ross assessed that Plaintiff was neurologically stable (Tr. 428).  Plaintiff again treated with Dr. Ross on March 7, 2011 for chronic pain and anxiety (Tr. 346).  He noted that Plaintiff was back to his baseline and was working a good deal (Tr. 346).  Although Plaintiff had muscle tenderness, his straight leg-raising test was normal bilaterally (Tr. 346).  He was alert, attentive, and his language and memory were grossly normal (Tr. 347).  At this time, although Plaintiff had an antalgic gait, he had normal strength, tone, and reflexes (Tr. 347).  Further, during this treatment visit, Plaintiff reported that his condition was stable (Tr. 347).  Dr. Ross also discussed rehabilitative, home exercise, and other non-medicinal options for symptom management (Tr. [3]47).  On April 1, 2011, Dr. Ross noted that Plaintiff remained stable, that he did not want to "rock the boat," that he was working hard, and was getting engaged (Tr. 420).[3]  Although Plaintiff had decreased range of motion in his spine and muscle tenderness, his straight leg-raising test was normal on both sides (Tr. 421).

In June 2011, Plaintiff had a face-to-face interview with the state agency and he had no problems walking, sitting, or standing (Tr. 239[-40]).  On June 29, 2011, Plaintiff reported that he had a bad month and that his heel was acting up, but Plaintiff declined Dr. Ross' suggestion for a rehabilitation program (Tr. 444).  Although Plaintiff had a decreased range of motion and a tender Achilles tendon, his straight leg raising

---

[3] The undersigned notes that Claimant is alleging he became disabled on April 30, 2011, that is, 29 days after the April 1, 2011 appointment.

was normal on both sides and he was in no acute distress (Tr. 444).

On July 25, 2011, Dr. Ross encouraged Plaintiff to enter a rehabilitation program and reduce his medications (Tr. 442). Although Plaintiff had a decreased range of motion, his straight leg raising test was again normal on both sides (Tr. 442). At that time, Plaintiff's strength, tone, and reflexes were normal, and Plaintiff reported that since his last visit his condition was stable (Tr. 443).

Plaintiff had an x-ray of his lumbosacral spine on September 14, 2011, which demonstrated lumbar spondylosis with incipient lower degenerative disc disease (Tr. 466). On October 20, 2011, Dr. Ross assessed that Plaintiff's neurologic condition remained stable (Tr. 48[2]). Thereafter, on December 16, 2011, Plaintiff reported that he was not doing well and that he had stopped formally working, was seeking alternatives, and applying for social security (Tr. 479). Although Plaintiff had decreased ranges of motion, his straight leg-raising tests, strength, tone, mental status, and memory were again normal (Tr. 479-80). During this visit, they discussed the SSI process and Plaintiff asked Dr. Ross to compete forms from his attorney (Tr. 480).

On January 10, 2012, Plaintiff treated with Dr. Ross after being involved in an automobile accident a few days prior (Tr. 476).[4] Plaintiff had decreased ranges of motion in his back and some tenderness, but his straight leg-raising tests were normal on both sides (Tr. 477). Plaintiff was alert, his attention was normal, and his fund of knowledge was normal (Tr. 477). Plaintiff's coordination, posture, and gait were also normal (Tr. 477). Dr. Ross noted that his initial diagnoses were traumatic brain injury, cervical sprain/strain syndrome, and a lumbar disc issue (Tr. 477).

Plaintiff reported that his pain was starting to subside on February 1, 2012, that he was walking and swimming, and reported making good progress (Tr. 474-75). On February 21, 2012, Plaintiff reported that his pain was 65%

---

[4] At the hearing, Plaintiff testified that there was no change with regard to his back pain from prior to the accident, but that it had effects on his leg and memory (Tr. 59-60).

better, and that he was still walking and swimming which continued to help (Tr. 472). Although Plaintiff reported concentration and memory problems, he had a normal mental status evaluation, and he reported good progress in his symptomatic relief (Tr. 473). Dr. Ross assessed that Plaintiff was returning toward his baseline on March 12, 2012, and noted that Plaintiff had started back at work (Tr. 469).[5] Plaintiff had a normal mental status evaluation, and although he had tenderness and mildly decreased ranges of motion in his back, his straight leg raising tests were normal bilaterally and he reported that he was making good progress in terms of his symptomatic relief (Tr. 470). On April 9, 2012, Dr. Ross noted that Plaintiff was working full time, was close to his baseline after the accident, and agreed to lower his medication (Tr. 467). At this time, Plaintiff had a normal neurological evaluation, and although he had a mildly decreased range of motion, and his ankle was fused, his straight leg-raising test was again normal on both sides (Tr. 468). Dr. Ross noted chronic pain syndrome (mostly in Plaintiff's ankle) with superimposed accident related complaints (which were resolving) (Tr. 468). Plaintiff reported that since his last visit he was making "good" progress in terms of symptomatic relief (Tr. 468).

On May 2, 2012, state agency physician Jorge Weksler, M.D. reviewed Plaintiff's records and assessed that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday (Tr. 104[-05]). He further assessed that Plaintiff could frequently climb ramps/stairs, stoop, and crawl; occasionally climb ladders/ropes/scaffolds; and had an unlimited ability to balance, kneel, and crouch; but that he should avoid concentrated exposure to hazards (Tr. 104-05). Dr. Weksler specifically noted that Plaintiff clinically improved as articulated in Dr. Ross' records, which stated that Plaintiff had symptomatic relief (Tr. 105).

In early May 2012, Plaintiff reported that he was gradually doing better (Tr. 516). Dr. Ross assessed that in late May and early June, 2012, Plaintiff was doing better and in June, Dr.

---

[5] Plaintiff testified that he had not worked full time since April 2011, and that this notation by Dr. Ross was a miscommunication (Tr. 43-44, 64-65). However, he testified that he was working on a project that never came to fruition (Tr. 43-44, 64-65).

Ross noted that Plaintiff was ready to further reduce his medications (Tr. 512, 514).

State agency psychologist Sheldon Levy, Ph.D., reviewed Plaintiff's records on May 1, 2012, and assessed that Plaintiff had no restriction in activities of daily living and social functioning, only mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation (Tr. 113). From a psychological perspective, Dr. Levy assessed that Plaintiff's limitations were not severe and that his allegations were only partially credible (Tr. 113).

Thereafter, on May 24, 2012, Plaintiff reported good progress in terms of his symptomatic relief (Tr. 514-15). On July 19, 2012, although Plaintiff reported that he was having a bad month, Dr. Ross assessed that Plaintiff's condition was improving and kept his treatment regimen the same (Tr. 510-11).

Dr. Ross noted that Plaintiff's condition was improving on September 14, 2012, that he was stable pain-wise, and would reduce his medications (Tr. 508). On October 10, 2012, Dr. Ross again assessed that Plaintiff's condition was improving, and that his course of treatment should remain the same (Tr. 506). At this time, Plaintiff complained of difficulty concentrating, but Dr. Ross discussed ways in which he may be able to afford work (Tr. 506). Thereafter, and despite these previous notes of improvement, Dr. Ross completed a questionnaire regarding Plaintiff with extreme limitations (Tr. 519-26).[6] Dr. Ross, a neurologist, noted that he did not treat Plaintiff for his medical conditions (Tr. 519[-20]). He also noted Plaintiff's primary symptoms as pain in his lower back and ankle and anxiety (Tr. 520). Dr. Ross assessed that Plaintiff could sit for 4 hours and stand and/or walk for 1 hour in an 8-hour day (Tr. 521). However, he did not assess any lifting or carrying limitations or any reaching and/or manipulative limitations (Tr. 523). Dr. Ross also noted that Plaintiff was only capable of low stress after his car accident, but Plaintiff would be absent more than three times in a month and had some psychological limitations (Tr. 525).

---

[6] The undersigned notes that Dr. Ross's questionnaire responses, indicating that Claimant is unable to perform even sedentary work, are dated October 29, 2012, that is, 19 days after Dr. Ross stated that he had discussed with Claimant "ways in which he may be able to afford [to] work." Tr. 506, 526.

### 3. VE Testimony

The VE testified that Plaintiff had past relevant work as an auto sales representative (light in exertion), a general manager (light in exertion), and small business owner (light in exertion – but as actually performed at the sedentary exertional level) (Tr. 67). The ALJ asked the VE whether a hypothetical person of Plaintiff's age, education, and work history who could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours out of an 8-hour day; sit for 6 hours of an 8-hour day; could frequently climb ramps/stairs, stoop, and crawl; could occasionally climb ladders, ropes, and scaffolds; and should avoid concentrated exposure to unprotected heights, could perform Plaintiff's past relevant work (Tr. 68-69). The VE testified that such a hypothetical individual could perform all of Plaintiff's past relevant work (Tr. 69).

Commissioner's Motion at 3-9 (DE 18).

## IV.  STANDARD OF REVIEW[7]

In reviewing claims brought under the Social Security Act, the court's role is a limited one. The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." 42 U.S.C. 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Moore, 405 F.3d at 1211; accord Perales, 402 U.S. at 401. The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). In addition to determining whether the Commissioner's factual findings are supported by

[7] The SSI disability regulations appear in Subsection I of 20 C.F.R. Part 416, 20 C.F.R. § 416.901 et seq., and are generally identical to those set forth in 20 C.F.R. Part 404, Subsection P, 20 C.F.R. § 404.1501 et seq., governing Social Security disability determinations. The standard of review in SSI cases is the same as the standard for Social Security disability cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing Social Security disability determinations is generally applicable to SSI cases.

substantial evidence, the court must determine whether the ALJ properly applied the correct legal standards. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

V.    ANALYSIS

    A.    The Sequential Evaluation

A "disability" is defined as an inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A). In determining the merits of a claim for benefits, courts must consider the evidence as a whole, including: 1) objective medical facts or clinical findings; 2) diagnoses of examining physicians; 3) subjective evidence of pain and disability as testified to by the claimant and corroborated by other witnesses; and 4) the claimant's age, education, and work history. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520, 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful employment. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment is not found, then the ALJ will conclude that there is no disability; if a severe

impairment is found, then the ALJ will proceed to the next phase of the analysis. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the "residual functional capacity" ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define RFC as what "you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This determination takes into account "all the relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others. 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3). The ALJ must then compare the RFC to the demands of the previous employment to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the burden shifts to the Commissioner to demonstrate that other substantial gainful employment exists in the national economy that the claimant can perform. Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); Smith v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit A 1981). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. Smith, 646 F.2d at 1077. These shifting burdens make up the fifth and final step, at which point the ALJ must resolve whether the claimant is actually capable of performing other gainful and substantial work

11

within the economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. See 20 C.F.R. § 404, subpt. P, app. 2. The Guidelines may be applied where a claimant is not performing substantial gainful activity and is prevented by a severe, medically determinable impairment from doing past relevant work. 20 C.F.R. §§ 404.1569, 416.969. The Guidelines are composed of detailed grids and rules, which, based on a claimant's residual functional capacity, age, education, and previous work experience, direct a finding of disabled or not disabled. See Walker, 826 F.2d at 1002.

Yet, the Guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of the rule." 20 C.F.R. §§ 404.1569, 416.969. The Guidelines, therefore, are generally not applicable where the claimant is unable to "perform the full range of work required of that category on a daily basis." Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991); Walker, 826 F.2d at 1002-03. Further, they may not be used when the claimant suffers from (significant) non-exertional limitations, such as (significant) mental impairments. Hargis, 945 F.2d at 1490; Walker, 826 F.2d at 1003. When the Guidelines may not be conclusively applied, they may serve only as a framework to determine whether sufficient jobs exist within the claimant's range of residual functional capacity. Hargis, 945 F.2d at 1490. In such instances, the Commissioner must instead carry her burden through the use of a vocational expert. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Walker, 826 F.2d at 1003. A

12

vocational expert provides the ALJ with a realistic appraisal of the work a claimant is capable of performing. Walker, 889 F.2d at 50.

B.    Application of the Sequential Evaluation by the ALJ

After considering all the evidence, the ALJ found that Claimant retains the RFC to perform his past relevant work and that he is therefore "not disabled" within the meaning of the Social Security Act. Tr. 31. In arriving at this conclusion, the ALJ addressed each step in the evaluative sequence.[8]

The ALJ first observed that Claimant has not engaged in substantial gainful activity since April 30, 2011, the alleged onset date of disability, as amended. Tr. 24.

The ALJ next found that Claimant does suffer "severe" impairments: "degenerative disc disease of the lumbar spine, hypertension and chronic pain syndrome." Tr. 24. But the ALJ also found that Claimant's mental impairment, anxiety, is "nonsevere," as it "does not cause more than [a] minimal limitation in [his] ability to perform basic mental work activities." Tr. 24.

The ALJ then found that Claimant does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Tr. 25.

The ALJ proceeded to assess Claimant's RFC. As part of this assessment, the ALJ considered all the evidence, including Claimant's subjective complaints.  The ALJ, however, found Claimant's statements concerns the intensity, persistence, and limiting

---

[8] Preliminarily, the ALJ noted that Claimant had acquired sufficient quarters of coverage to remain insured through December 31, 2015. Tr. 22, 24.  Accordingly, "[C]laimant must establish disability on or before [December 31, 2015] in order to be entitled to a period of disability and disability insurance benefits." Tr. 22.

effects of his symptoms to be "not credible."  Tr. 29.  After discounting Claimant's

subjective complaints, the ALJ found that Claimant retains the RFC to perform a limited

range of "light work."[9]  More specifically, the ALJ stated:

> [Claimant] has the [RFC] to lift 20 pounds occasionally and 10
> pounds frequently, stand and/or walk for 6 hours out of an 8
> hour day and sit for 6 hours out of an 8 hour day with frequent
> climbing or ramps/stairs, stooping and crawling and occasional
> climbing of ladders, ropes and scaffolds.  Claimant should
> avoid concentrated exposure to unprotected heights (20 CFR
> 404.1567(b) and 416.967(b)).

Tr. 25-26.  In arriving at this RFC finding, the ALJ made clear that she had carefully

considered "the entire record" and had also considered "opinion evidence in accordance

---

[9] Social Security Ruling 83-10 defines "light work":

Light work.  The regulations define light work as lifting no more than 20
pounds at a time with frequent lifting or carrying of objects weighing up to 10
pounds.  Even though the weight lifted in a particular light job may be very little, a
job is in this category when it requires a good deal of walking or standing - - the
primary difference between sedentary and most light jobs.  A job is also in this
category when it involves sitting most of the time but with some pushing and pulling
of arm-hand or leg-foot controls, which requires greater exertion than in sedentary
work; e.g., mattress sewing machine operator, motor-grader operator, and road-
roller operator (skilled and semiskilled jobs in these particular instances).  Relatively
few unskilled light jobs are performed in a seated position.

"Frequent" means occurring from one-third to two-thirds of the time.  Since
frequent lifting or carrying requires being on one's feet up to two-thirds of a workday,
the full range of light work requires standing or walking, off and on, for a total of
approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during
the remaining time.  The lifting requirement for the majority of light jobs can be
accomplished with occasional, rather than frequent, stooping.  Many unskilled light
jobs are performed primarily in one location, with the ability to stand being more
critical than the ability to walk.  They require use of arms and hands to grasp and
to hold and turn objects, and they generally do not require use of the fingers for fine
activities to the extent required in much sedentary work.

1983 WL 31251, at *5-6 (S.S.A.).

with the requirements of 20 CFR 404.1527 and 416.927"[10] and the pertinent Social Security Rulings. Tr. 25-26. Here, the ALJ's RFC assessment is fully consistent with that of Dr. Jorge Weksler (the state agency physician), who, in turn, had reviewed and expressly relied upon the notes of Dr. Ross (the treating physician). Like Dr. Weksler, the ALJ considered the notes of Dr. Ross, and she devoted several pages of her decision to their thorough review. Indeed, the content of those notes formed the basis for the ALJ's rejection of Dr. Ross's disability opinion. As articulated in her written decision, the ALJ found that Dr. Ross's opinion was "not supported by the doctor's own notes nor [by] the objective medical evidence found in the record." Tr. 30.

The ALJ next considered whether Claimant's RFC would permit him to return to his past relevant work. Relying on the testimony of a vocational expert ("VE") (who had consulted the Dictionary of Occupational Titles), the ALJ determined that Claimant's RFC (for a limited range of light work) would permit him to perform his past relevant work as those jobs are "actually performed." Tr. 31. Specifically, the ALJ found that Claimant could return to his past work as an automobile sale representative (light work), as a general manager (light work), and/or as a small business owner (light work, but performed more as sedentary). Accordingly, the ALJ concluded that Claimant "has not been under a

---

[10] The Regulations at 20 C.F.R. §§ 404.1527 and 416.927 speak to the importance of state agency physicians and stipulate that they are "highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i). The Regulations require that an ALJ consider the findings of state agency physicians as opinion evidence. Id.

In his matter, the state agency physician, Dr. Jorge Weksler, reviewed Claimant's records, including Dr. Ross's treatment notes, and found that Claimant could perform the range of work consistent with the ALJ's assessed RFC. Tr. 104-05. Dr. Weksler specifically relied upon Dr. Ross's notes showing that Claimant was clinically improved and displayed symptomatic relief. Tr. 105.

disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision," and, therefore, is not entitled to either DIB or SSI. Tr. 31.

C.    Discussion

In his motion, Claimant argues that the ALJ erred in two respects: she failed to follow "the treating physician rule," and she also failed to properly evaluate Claimant's credibility.  Claimant's Motion at 6-11 (DE 13).  The undersigned, however, is not persuaded and concludes that the ALJ had substantial record evidence with which to discount the treating physician's opinion and Claimant's subjective complaints and, further, that the ALJ properly applied the correct legal standards.

1.    Treating Physician's Opinion

Claimant first argues that the ALJ did not properly evaluate the opinion of his treating neurologist, Dr. Ross, with respect to his alleged functional limitations. Id. at 6-9. Dr. Ross had opined that Claimant could only stand/walk for 1 hour in an 8-hour day and sit for 4 hours. Tr. 521. Dr. Ross's opinion, therefore, would preclude Claimant from performing even sedentary work.[11] Tr. 521. Claimant contends that the ALJ should have accorded this treating source opinion "controlling weight." Claimant's Motion at 7 (DE 13).

The Regulations do require that an ALJ give more weight to the opinion of a treating source. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).  The ALJ must accord a treating source opinion controlling weight where it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial

---

[11]    Social Security Ruling 83-10 states that "at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at * 5 (S.S.A).

16

evidence in the record. Id. When controlling weight is not accorded the opinion, the ALJ must consider the specialization of the physician, the length of the treatment relationship, the nature and frequency of the examinations, the evidence offered in support of the opinion, and the consistency of that opinion with the record as a whole. 20 C.F.R. §§ 404.1527(c) and 416.927(c). An ALJ, however, may discount a treating source's opinion when "good cause exists for not heeding the treating physician's diagnosis." Edward v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). An ALJ has good cause to discount a treating physician's opinion where: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or is inconsistent with his own medical records. Caldwell v. Barnhart, 261 Fed. Appx. 188, 191 (11th Cir. 2008) (unpublished). The ALJ is the sole adjudicator of how much weight to accord the medical opinions in a case. See 20 C.F.R. §§ 404.1527(c),(d)(1) and 416.927(c),(d)(1); see also Richardson v. Perales, 402 U.S. 389, 399 (1971) (holding that when presented with conflicting medical evidence, the trier of fact has the duty to resolve that conflict).

Here, the ALJ properly applied the Regulations and articulated good cause for discounting the opinion of Dr. Ross. In explaining her reasons for according Dr. Ross's opinion "little weight," the ALJ made clear that the treating physician's opinion of disability was "not supported by the doctor's own notes nor the objective medical evidence found in the record." Tr. 30. The ALJ provided a detailed predicate for this finding by devoting several pages of her decision to a methodical review of Dr. Ross's records. Tr. 26-30. Preliminarily, the undersigned notes, as did the ALJ, Dr. Ross's own acknowledgment that he never actually rendered any medical treatment. Tr. 29. Indeed, when asked in the

17

Multiple Impairment Questionnaire to "[i]dentify the laboratory and diagnostic test results which demonstrate and/or which support your diagnosis," Dr. Ross (who is employed by a neuro-behavioral institute) made plain: "I do not treat him for medical conditions."[12] Tr. 520. More importantly, however, Dr. Ross's notes consistently show that Claimant had clinically improved and often reported symptomatic relief. Tr. 30, 467-70, 473-75, 506, 508, 510-11, 514-15. Despite the periodic severity in symptoms and decreased range of motion testing of the cervical and lumbar spines, Claimant's strength, tone, and reflexes remained normal, his sensation remained intact, and his straight leg-raising tests were normal. Tr. 346-47, 349, 392, 410, 421, 442, 444, 468, 470, 477, 507, 509, 511, 513, 515, 517. As late as February 2012, Claimant reported that he was swimming and walking. Tr. 474-75, 472. Indeed, in May 2012, Dr. Weksler (state agency physician) reviewed Dr. Ross's notes (showing that Claimant was clinically improved and reported symptomatic relief) and found that Claimant could perform a limited range of light work. Tr. 104-05. Significantly, Dr. Ross's opinion of disability – rendered in October 2012 and based on symptoms believed to date to April 2011 – is materially undermined by his own notes stating that Claimant had started back to work in March 2012 and had been working full time as of April 2012. Tr. 469, 467.[13] Furthermore, immediately before opining that

---

[12] According to the medical records, Claimant saw Dr. Ross for pain management. Tr. 340.

[13] Although Claimant had testified that he did not work after April 2011 and that there had been a miscommunication on the part of his physician, the ALJ found this testimony "questionable, as it was noted that [Claimant] had returned to work during several different office visits." Tr. 30. Moreover, even if (as Claimant contends) Dr. Ross had been laboring under a misapprehension, his expressed belief that Claimant had actually been working as of March and April 2012 cannot be reconciled with his October 2012 opinion that Claimant had been suffering disabling limitations since April 2011.

Claimant was effectively unable to work, Dr. Ross noted not only that Claimant was improving, but also that the two had been discussing ways in which Claimant could afford to work. Tr. 506.

In sum, the ALJ had substantial evidence to discount Dr. Ross's opinion and to find that it was "not supported by [his] own notes nor [by] the objective medical evidence found in the record." Tr. 30. In reaching that finding, the ALJ properly applied the correct legal standards.

        2.    Claimant's Credibility

Claimant's second argument is that the ALJ erred in assessing his credibility, more specifically, in discounting his subjective complaints. Claimant's Motion at 9-11 (DE 13). According to Claimant, the ALJ failed to compare his subjective complaints against the evidence of record. Id. at 10. The undersigned, however, does not agree.

The ALJ's assessment of a claimant's subjective complaints is governed by 42 U.S.C. § 423(d)(5)(A), which states in part:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . would lead to a conclusion that the individual is under a disability.

The Eleventh Circuit has stated that an individual alleging disabling pain must show not only evidence of an underlying medical condition, but also either "objective medical evidence that confirms the severity of the alleged pain arising from that condition or . . . that the objectively determined medical condition is of such a severity that it can

19

reasonably be expected to give rise to the alleged pain." Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing Hand v. Heckler, 761 F.2d 1545, 1548 (11th Cir. 1985)). "Th[is] standard also applies to complaints of subjective conditions other than pain." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). When this standard is met, the ALJ must then consider a claimant's subjective complaints. Foote v. Chater, 67 F.3d 1553, 1560-61 (11th Cir. 1995). The ALJ, however, need not credit those complaints. Id. She may discount them provided she "articulates adequate reasons for doing so." Id. at 1561-62.

Here, the ALJ adequately articulated her reasons for discounting Claimant's subjective complaints of disabling symptoms and limitations. In her written decision, the ALJ conducted a thorough review of the medical records. She noted that from June 2011 to February 2012, Claimant's strength, tone, reflexes, and straight leg raising tests were normal, although his pain fluctuated with some decreased ranges of motion and tenderness. In September 2012, Claimant's examination showed that he was stable pain-wise and that his cervical and lumbar spines had only mildly decreased ranges of motion. Beyond these largely normal findings (apart from decreased ranges of motion and tenderness), medical records also showed that Claimant had started back to work in March 2012 and had begun working full time by April 2012. These records stand in stark contrast with Claimant's assertions that he became unable to work as of January 2011 and, as amended, as of April 2011. At the hearing, Claimant's representative attempted to reconcile this inconsistency by asking Claimant (in leading fashion) whether these medical notes were due to "a miscommunication between you and the doctor," to which Claimant responded: "Miscommunication. Miscommunication." Tr. 44. As the fact-finder, however,

the ALJ deemed this explanation "questionable, as it was noted [in the medical records] that [Claimant] had returned to work during several different office visits." Tr. 30. Further undermining Claimant's assertion that he could not work after January 2011 or (as amended) after April 2011 was Claimant's actual receipt of unemployment compensation during the relevant period (including as of November 2012 hearing). Tr. 57. By receiving unemployment benefits, Claimant was representing that he was ready, willing, and able to work. See Fla. Stat. § 443.091(1)(d) (requiring that an applicant for unemployment benefits be "able to work" and "actively seeking work" to qualify for unemployment benefits). Taken together, Claimant's largely normal medical findings, his receipt of unemployment compensation as of November 2012, and his reported return to work as of March 2012 and (full-time) as of April 2012 combine to undermine his assertions that his disabling pain and limitations precluded his working after January 2011 or even April 2011.

Considering the record as a whole, substantial evidence supports the ALJ's finding that Claimant's complaints of disabling pain and limitations were not fully credible. And as she was required to do, the ALJ adequately articulated her reasons for arriving at this finding.[14]

## VI.    RECOMMENDATION

The ALJ accorded Claimant a full and fair administrative consideration in accordance with the applicable statutes and regulations. The ALJ issued a thorough decision in which she found that Claimant possessed an RFC for a limited range of light

---

[14] The ALJ made clear in her decision that she had considered "the entire record." Tr. 25. Although the ALJ did not explicitly cite the review of Dr. Sheldon Levy, the state agency psychologist, the undersigned notes that Dr. Levy examined the records and found Claimant's mental allegations only "partially credible." Tr. 113.

work that would allow him to return to his previous employment and that he was therefore not entitled to SSI or DIB. Claimant has argued that the ALJ's RFC finding is flawed because she improperly discounted both the treating physician's opinion of disability and Claimant's subjective complaints of disabling pain and limitations. The undersigned, however, concludes that substantial evidence supports the ALJ's findings and assessments and, further, that the ALJ properly applied the correct legal standards in arriving at her determinations. The undersigned, therefore, respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof (DE 13) be DENIED, that Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (DE 18) be GRANTED, and that Commissioner's decision be AFFIRMED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the district court of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. See 28 U.S.C. § 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE and SUBMITTED at Fort Lauderdale, Florida this 18th day of December 2013.

BARRY S. SELTZER
Chief United States Magistrate Judge

22

Copies furnished to:

Honorable James I. Cohn
United States District Judge

David I. Mellinger, Esq.
Assistant United States Attorney
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394
Attorney for Defendant

Stacey B. DeVeaux, Esquire
1 East Broward Boulevard, Suite 800
Fort Lauderdale, Florida 33301
Attorney for Plaintiff